MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

KIRSTIN M. AULT (CABN 206052)
Assistant United States Attorney

    450 Golden Gate Ave., Box 36055
San Francisco, California 94102
Telephone:  (415) 436-6940
Facsimile: (415) 436- 7234
E-mail: kirstin.ault@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    CR 10-0642 CRB |
| Plaintiff, | UNITED STATES' SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISMISS INDICTMENT |
| v. | |
| CHRISTOPHER NAPOLI, et al. | |
| Defendants. | |

## INTRODUCTION

    The United States submits this supplemental opposition to the defendants' motion to dismiss the indictment to respond to two arguments raised by defendant Carozza that were not addressed in defendant Arnold's brief: (1) the present prosecution violates the Ex Post Facto Clause; and (2) the present prosecution violates the principles of federalism by involving the federal government in the regulation of medical practice.  Both of these additional arguments are without merit.

    As discussed in the United States' original brief, the conduct charged in the indictment has been outlawed by the Controlled Substances Act (CSA) since its inception.  The defendants

are not charged with violating any new provision of the CSA added by the Ryan Haight Act but rather are alleged to have distributed controlled substances outside the scope of professional medical practice and not for a valid medical purpose. The Ryan Haight Act did nothing to alter the basic prohibition against distributing controlled substances without valid prescriptions, and that is all that is charged in the present indictment. Therefore, there are no Ex Post Facto considerations involved in the present prosecution.

Also as discussed in the United States' original brief, the criminal conduct underlying the indictment is a violation of the CSA itself, not a violation of any regulation or Attorney General opinion. As the Supreme Court has held, Congress may regulate the distribution of controlled substances as a valid exercise of its authority under the Commerce Clause. Where medical practice involves the distribution of controlled substances, medical professionals, including doctors, must abide by the terms of the CSA. Contrary to the defendants' repeated arguments, the indictment does not charge the defendants with violating the CSA in any one particular manner. Rather, the indictment appropriately alleges that the defendants violated the CSA by distributing controlled substances outside the scope of professional practice and not for a legitimate medical purpose. Whether particular actions violate this standard is a question of fact to be determined at trial. By charging the defendants with violating the CSA, the United States is not usurping the states' authority to regulate medicine or attempting to declare that a particular practice is *per se* illegal. The United States is simply alleging that what the defendants did violated the law. The indictment appropriately charges a violation of federal criminal law, and the defendants' motion to dismiss should be denied.

## BACKGROUND

### A.    The Indictment.

On August 31, 2010, a grand jury sitting in the Northern District of California returned a thirteen count indictment charging the defendants and nine others with violations of the CSA (21 U.S.C. §§ 841 and 846), and money laundering statutes (18 U.S.C. §§ 1956(h) and 1957), based on their participation in Internet pharmacy operations. *See* Clerk's Record ("CR") 1 (hereinafter

1    "Indictment").  The indictment alleges that defendant Carozza was one of the physicians who

2    approved orders for controlled substances for the Internet pharmacy known as SafeScripts

3    Online.  Indictment ¶¶ 2-4 .

4            The Indictment charges the defendants with violations of the CSA using the language of

5    the statute.  For example, the language of Count One states:

        Beginning at a time unknown to the grand jury but no later than
        November of 2004 and ending in or about December of 2006, both
        dates being approximate and inclusive, within the Northern District
        of California, and elsewhere, defendants . . . . together with others
        known and unknown to the grand jury, conspired to distribute, and
        to possess with intent to distribute, outside the scope of
        professional practice and not for a legitimate medical purpose, one
        or more controlled substances, which offense involved substances
        containing (a) phendimetrazine, a Schedule III controlled
        substance; (b) diazepam, a Schedule IV controlled substance; (c)
        phentermine, a Schedule IV controlled substance; and (d)
        clonazepam, a Schedule IV controlled substance, in violation of
        Title 21, United States Code, Section 841(a)(1), all in violation of
        Title 21, United States Code, Sections 846, 841(b)(1)(D) and
        841(b)(2).

14   Indictment ¶ 33.  Similarly, the language of Count Two states:

        On or about February 24, 2006, within the Northern District of
        California and elsewhere, defendants . . . together with others, did
        knowingly and intentionally distribute, and possess with intent to
        distribute, outside the scope of professional practice and not for a
        legitimate medical purpose, one or more controlled substances,
        which offense involved a substance containing: phentermine, a
        Schedule IV controlled substance, in violation of Title 21, United
        States Code, Sections 841(a)(1) and (b)(2).

20   Indictment ¶ 35.

21   **B.    The Ryan Haight Act**

22           On October 1, 2008, Congress amended the CSA and provided that, except as otherwise

23   authorized, it was unlawful for any person to knowingly and intentionally distribute controlled

24   substances by means of the Internet.  21 U.S.C. § 841(h)(1).  In section 841(h)(2), Congress

25   provided examples of the unlawful distribution by means of the Internet, including writing

26   prescriptions in violation of section 829(e).  In that section, Congress defined a "valid

27   prescription" as a prescription issued for a "legitimate medical purpose in the usual course of

28

1  professional practice" by a "practitioner that has conducted at least 1 in-person medical

2  evaluation of the patient." 21 U.S.C. § 829(e)(1), 2(A). The statute further provided that

3  "nothing in clause (i) shall be construed to imply that 1 in-person medical evaluation

4  demonstrates that a prescription has been issued for a legitimate medical purpose within the usual

5  course of professional practice." 21 U.S.C. § 829(e)(2)(B)(ii).

6       In addition to the provisions cited above, the amendments increase regulation of

7  pharmacies seeking to dispense controlled substances via the Internet, require online pharmacies

8  to post certain information on their websites, increase penalties for the distribution of Schedule

9  III and IV controlled substances, and prohibit the use of the Internet to advertise the illegal sale of

10 a controlled substance. 21 U.S.C. §§ 802 (50-56), 823(f), 827(d), 830, 841(b); Ryan Haight

11 Online Pharmacy Consumer Protection Act of 2008, H.R. 6353, 110th Cong. (2008).

12                                    **DISCUSSION**

13 **A.    This Prosecution Does Not Violate the Ex Post Facto Clause.**

14      As discussed in the United States' original opposition brief, the conduct in which the

15 defendants engaged was illegal before the Ryan Haight Act was passed. The indictment does not

16 charge the defendant with violating 21 U.S.C. § 841(h) or any other provision added by that Act.

17 Rather, the indictment charges violations of 21 U.S.C. §§ 841(a)(1), (b)(2) and 846 as they

18 existed at the time the conduct charged in the indictment is alleged to have occurred. As the

19 Supreme Court held in *United States v. Moore*, 423 U.S. 122, 124 (1975), the defendants'

20 conduct of distributing drugs outside the scope of professional medical practice and not for a

21 legitimate medical purpose violates these basic provisions of the CSA. The fact that the

22 defendants used the Internet, as opposed to telephones or hand-to-hand street sales, does not alter

23 the applicability of the CSA's anti-trafficking provisions to their conduct. *See United States v.

24 Birbragher*, 576 F.Supp.2d 1000, 1015 (N.D. Iowa 2008) ("The fact the alleged criminal conduct

25 occurred through Internet transactions is irrelevant."); *United States v. Quinones,* 536 F. Supp. 2d

26 267, 271 (E.D.N.Y. 2008) ("That the moving defendants allegedly carried out their activities

27 through the Internet is of no consequence."). Every court to consider this issue has concluded

28

that distribution of drugs following the model used by the defendants alleged in the Indictment violated the CSA before its amendment by the Ryan Haight Act in 2008. *See United States v. Lovern*, 590 F.3d 1095, 1100-01 (10th Cir. 2009) (defendants' operation of Internet pharmacy in 2005-06 violated CSA); *United States v. Smith*, 573 F.3d 639, 657-58 (8th Cir. 2009) (operation of Internet pharmacy in 2004-05 violated CSA); *United States v. Fuchs*, 467 F.3d 889, 899-901 (5th Cir. 2006) (operation of Internet pharmacy in 1999-2000 violated CSA); *see also Birbragher*, 576 F.Supp.2d at 1015 (indictment sufficiently charged Internet pharmacy operators with violating CSA for conduct occurring in 2004-05); *Quinones*, 536 F.supp.2d at 273 (indictment sufficiently charged Internet pharmacy operators with violating the CSA as it existed before the Ryan Haight Act). Contrary to defendants' assertion, this includes at least one court sitting in the Ninth Circuit. *See United States v. Lovin*, 2008 WL 4492616 at *5 (S.D. Cal. 2008) (finding that passage of Ryan Haight Act did not "invalidate the government's prosecution of defendants under the existing provision of the CSA"). Because the defendants are charged with violating the CSA as it existed when the alleged conduct occurred, the Ex Post Facto Clause does not bar prosecution of the charged offenses and the defendants' motion to dismiss should be denied. *See United States v. Bischel*, 61 F.3d 1429, (9th Cir. 1995) (statute extending limitations period did not violate Ex Post Facto Clause where conduct for which defendant was indicted was already criminal at the time statute was enacted).

**B.     This Prosecution Does Not Interfere With State Regulation of the Practice of Medicine.**

The defendants also argue that a prosecution under the CSA for illegally distributing controlled substances under the guise of valid prescriptions interferes with the state regulation of the practice of medicine. This argument runs contrary to both *Moore* and the Supreme Court's decision in *Gonzales v. Oregon*, 546 U.S. 243 (2006), on which the defendants purport to rely.

In *Gonzales*, the Supreme Court considered whether a 2001 interpretative rule issued by the U.S. Attorney General was constitutional. That rule provided "that assisted suicide is not a 'legitimate medical purpose' within the meaning of 21 C.F.R. 1306.04 (2001), and that

prescribing, dispensing, or administering federally controlled substances to assist suicide violates

the Controlled Substances Act." 66 F.3d Reg. 56607, 56608. *Gonzales* arose after the State of

Oregon passed a law authorizing physician-assisted suicide in some cases and sought to enjoin

enforcement of the Attorney General's interpretative rule. The Supreme Court held the CSA, as

interpreted in *Moore*, did not authorize the Attorney General to uniformly and unilaterally bar

physicians from dispensing controlled substances for the purpose of assisting suicide in the face

of a state law authorizing such a medical procedure. *Gonzales*, 546 U.S. at 275.

The concerns raised by the Supreme Court in *Gonzales* are not at issue here, and the

analysis in *Quinones*, 536 F.Supp.2d at 271, is instructive. When faced with a nearly identical

challenge to the indictment in that case based upon the Supreme Court's *Gonzales* decision, the

court concluded:

> [t]he moving defendants take *Gonzales* to mean that the Attorney
> General does not have the authority to decide what medical
> practices constitute a violation of the federal drug laws. While that
> is certainly a fair reading of *Gonzales*, it is a gross
> mischaracterization of the present prosecution. The government is
> not trying to establish a *per se* rule that Internet prescriptions are
> invalid; rather, it is prosecuting the defendants under the rule
> established in *Moore* that prescribing drugs outside the usual
> course of professional practice is illegal. The government is
> making no attempt, as in *Gonazales*, to unilaterally define which
> practices fall outside that scope; rather, it intends to leave that
> question where it has been for over 30 years – with the jury.

*Quinones*, 536 F. Supp. 2d at 271. Contrary to the defendants' assertion, the United States is not

contending that all Internet pharmacies are illegal. Rather, the United States is prosecuting the

defendants under the rule established in *Moore*, alleging that their activities fell outside the safe-

harbor provision of the CSA, which allows controlled substances to be distributed only if the

distribution is within the usual scope of professional practice and for a valid medical purpose.

*See Lovern*, 590 F.3d at 1100 (holding that *Gonzales* did not apply to an Internet pharmacy

prosecution where "the government sought to establish that the conduct of [the defendants] was

inconsistent with the usual course of professional practice the old-fashioned way: through

witnesses and documentary proof at trial focused on the contemporary norms of the medical

profession").  The prosecution of the defendants is not an attempt by the federal government to define what is the appropriate practice of medicine, but instead raises "the material issue [of] whether [the defendant] wrote these prescriptions outside the usual course of medical practice and without a legitimate medical purpose."  *United States v. Katz*, 445 F.3d 1023, 1030 (8th Cir. 2006).

The defendants incorrectly contend that 21 C.F.R. §1306.04 regulates the practice of medicine in violation of the Supreme Court decision in *Gonzales*.  This regulation does not control the statutes at issues, but instead clarifies what constitutes a lawful prescription. *Gonzales* stands for the proposition that the federal government through the Attorney General of the United States cannot regulate the practice of medicine.  Instead, the Attorney General may regulate such matters as relate to the security of controlled substances and maintenance of records. 546 US at 264-68.

> The statute and our case law amply support the conclusion that *Congress regulates medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood.*  Beyond this, however, the statute manifests no intent to regulate the practice of medicine generally.   The silence is understandable given the structure and limitations of federalism, which allow the States " 'great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.'"

546 U.S. at 269-70, *quoting Medtronic, Inc. v. Lohr,* 518 U.S. 470, 475 (1996) (further quotation omitted) (emphasis added).

The holding of *Gonzales* is that the Attorney General cannot define what is or is not an acceptable practice of medicine, but the Attorney General can define how controlled substances may be distributed and dispensed.  The CSA clearly defines illegal acts of distribution as found at Title 21, United States Code, Section 841.  At the same time, the regulation at 21 C.F.R. § 1306.04 defines what constitutes a lawful prescription for controlled substances:

> (a) A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.

> The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.  An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

As the Court noted in *Gonzales*, this regulation "does little more than restate the terms of the statute itself."  546 U.S. at 257 (noting that various sections of the CSA require prescriptions to be supported by a "currently accepted medical use," a "medical purpose," and "issued for a legitimate medical purpose," and that a physician acts as a "practitioner" only where he or she dispenses controlled substances "in the course of professional practice."). Within this regulation the Attorney General does not purport to define what is considered a "legitimate medical purpose" or the "usual course of professional practice."  Rather, that issue is properly left to state law and the medical profession itself.  The indictment does no more than charge that the defendants violated the CSA by distributing drugs outside of the safe harbor established by the CSA itself.  The question of whether what the defendants did in fact fall outside of that safe harbor is an issue for the jury to determine at trial.

Of course, the fact that what the defendants were doing violated state law as well as guidelines promulgated by professional medical associations may be evidence that their course of conduct was outside the scope of professional medical practice.  For example, since at least September of 2000, the state of California has prohibited the practice of distributing drugs based on orders placed over the Internet where no physical examination is conducted by the physician who purports to issue the prescription.  *See* California Business & Professions Code Section 2242.1(a) ("No person or entity may prescribe, dispense, or furnish, or cause to be prescribed, dispensed, or furnished, dangerous drugs or dangerous devices, as defined in Section 4022, on the Internet for delivery to any person in this state, without an appropriate prior examination and medical indication, except as authorized by Section 2242").  Similarly, the state of New York,

where defendant Carozza was licensed to practice medicine issued a regulation stating "No controlled substance prescription shall be issued prior to examination of the patient by the practitioner except as otherwise permitted by this subdivision." 10 Admin. Rules & Regs., Section 80.62(c)(1).  The "exceptions" to this regulation, which cover 5-day emergency supplies of medication and situations where the patient's primary physician is unavailable for a short period of time, do not apply to the defendants' conduct in this case.  Beginning in 1999, the American Medical Association likewise issued guidance for physicians regarding prescribing medications over the Internet stating, "A valid physician-patient relationship includes obtaining a reliable medical history and a physical examination."  American Medical Association, H-120.949 Guidance for Physicians on Internet Prescribing.  Likewise, the Federation of State Medical boards issued the following guidance: "Treatment, including issuing a prescription, based solely on an online questionnaire or consultation does not constitute an acceptable standard of care." Federation of State Medical Boards, Model Guidelines for the Appropriate use of the Internet in Medical Practice.

The CSA does not purport to displace state laws or professional association positions regarding the appropriate practice of medicine.  The defendants are charged simply with violating the CSA by unlawfully distributing controlled substances.  If the distribution falls within the exception to the CSA because it was authorized by a physician acting in the usual course of professional practice and for a valid medical purpose, then what the defendants did was not a crime.  However, if the proof at trial shows, as alleged in the indictment, that the distribution was not within this exception, the defendants' conduct violated the CSA.  This is a factual question that will be resolved by the jury at trial.

The prosecution of the defendants for illegally distributing drugs that were not authorized by a physician acting in the usual course of professional practice and for a valid medical purpose does not implicate the issues raised in *Gonzales* regarding the power of the Attorney General to regulate the practice of medicine.  The prohibition on distributing drugs outside of professional medical practice comes from the CSA itself and there can be no argument that Congress is not

allowed to regulate the distribution of controlled substances. *See Gonzales v. Raich.* 545 U.S. 1, 26 (2005). This prosecution is not premised on the contention that the defendants violated a regulation prohibiting a particular practice of medicine. Rather, the question of whether the defendants' drug distribution was outside the scope of professional medical practice is properly left for the jury to determine. Because the prosecution is not based on an improper exercise of the Attorney General's authority, the defendants' motion to dismiss should be denied.

## **CONCLUSION**

For the reasons discussed above, the defendants' motion to dismiss the indictment should be denied. The indictment does not implicate the Ex Post Facto Clause because the defendants are charged with violating the CSA as it existed at the time they committed the crimes alleged in the indictment. The indictment does not implicate the scope of the Attorney General's rule-making authority because the defendants are charged with violating the provisions of the statute itself and not the interpretive guidance issued by the Attorney General or any other federal authority. Because the indictment properly charges the defendants with violating the CSA, the defendants' motion to dismiss should be denied.

DATED: November 24, 2010                          Respectfully submitted,

                                                 MELINDA HAAG
                                                 United States Attorney

                                                       /s
                                                 _____
                                                 KIRSTIN M. AULT
                                                 Assistant United States Attorney