JOSH A. COHEN (SBN 217853)
633 Battery St., Suite 110
San Francisco, California 94111
(415) 693-9173
josh@cohenlawsf.com

LAWRENCE S. LUSTBERG (*pro hac vice*)
Gibbons PC
One Gateway Center
Newark, New Jersey 07102
(973) 596-4731
llustberg@gibbonslaw.com

Attorneys for Defendant
JOSEPH CAROZZA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH CAROZZA,<br><br>Defendant. | CASE NO. CR-10-0642 CRB<br><br>**DEFENDANT JOSEPH CAROZZA'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: November 30, 2010<br>Time: 2:15 p.m.<br>Courtroom: 8 |

### Introduction

Dr. Joseph Carozza is charged with issuing prescriptions to patients via the Internet on the basis of online questionnaires and without in-person physical exams. The question presented by his motion to dismiss is whether that conduct was a crime at the time he is alleged to have done it. This is a question for the Court, not the jury. Because the answer to the question is no, the Court should grant Dr. Carozza's motion and dismiss all of the charges against him.

**Argument**

I. **THE COURT MUST DETERMINE WHETHER THE PARTICULAR COURSE OF CONDUCT ALLEGED AS TO DR. CAROZZA CONSTITUTES A FEDERAL CRIME**

In its opposition to Dr. Carozza's motion, the government repeatedly insists that the indictment sufficiently alleges the elements of a violation of the Controlled Substances Act ("CSA"). As it must in order to elide the question whether Dr. Carozza's actions—as expressly alleged—violated the CSA, the government argues that the indictment does not allege that the offense was committed "in any one particular manner." Gov't Supp. Opp'n at 2. Rather, says the government, "[t]he indictment does no more than charge that the defendants violated the CSA by distributing drugs outside of the safe harbor established by the CSA [for distribution within the usual scope of professional practice and for a valid medical purpose]. . . . The question of whether what the defendants did in fact fall[s] outside of that safe harbor is an issue for the jury to determine at trial." *Id.* at 8.

The government is mistaken in two critical respects. First, it is readily apparent from the face of the indictment precisely what Dr. Carozza is alleged to have done to run afoul of the Controlled Substances Act (CSA). As it is required to do to provide Dr. Carozza with constitutionally adequate notice, the indictment goes well beyond the language of the statute to describe Dr. Carozza's purportedly criminal conduct. *See Russell v. United States*, 369 U.S. 749, 764-65 (1962). Thus, Dr. Carozza is specifically alleged to have "review[ed] . . . on-line questionnaires and approve[d] a prescription for the Controlled Substances requested by the customers." Indictment ¶ 3. He is further alleged to have done so without "physically examin[ing] or obtain[ing] a complete medical history from the customers." *Id.* It is this conduct in particular, and none other, that allegedly rendered Dr. Carozza's prescriptions in violation of the CSA. *Id.* ¶ 2.

Second, it is not the jury's function to determine whether these allegations are sufficient to state a criminal offense. Juries find facts; they do not decide whether those facts, if proven, establish a crime as a matter of law. Fed. R. Crim. P. 12(b)(3)(B); *see* Def. Carozza's

Memorandum In Support of Motion to Dismiss (MTD) at 3-5 (citing cases).  Here, it is the government's view that the Controlled Substances Act has always required an in-person examination as a condition of a valid prescription, such that prescriptions written without such exams fall outside the scope of usual professional practice.  Gov't Opp'n at 2-5.  *If* the government is correct in this view, then a jury can convict Dr. Carozza upon a finding that he failed to conduct in-person exams.  But *whether* the government is correct in this view is a purely legal determination that must be made by the Court.  *See United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983) ("It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense."); *accord United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) ("a motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact") (citation omitted).

In sum, the government cannot prevent scrutiny of the indictment simply by saying that there will be a trial.  The question at this stage of the proceedings is whether the allegations, as set forth in the indictment, suffice to state a crime for which Dr. Carozza can be prosecuted and potentially punished.  For all of the reasons stated in Dr. Carozza's motion and discussed further herein, they do not.  Accordingly, the indictment must be dismissed.

## II. THE INDICTMENT VIOLATES THE *EX POST FACTO* CLAUSE BECAUSE DR. CAROZZA'S ALLEGED CONDUCT WAS NOT CRIMINAL IN 2006

Dr. Carozza has argued that the Ryan Haight Act made it a crime to issue an online prescription without a prior face-to-face evaluation.  MTD at 15-20.  Though this is precisely what Dr. Carozza is alleged to have done to violate the law, the government contends that the Ryan Haight Act is irrelevant to this prosecution.  According to the government, Dr. Carozza is criminally liable because the very same conduct was criminal even before the Ryan Haight Act made it so.  Gov't Opp'n at 4.[1]

---

[1] Notwithstanding the government's insistence that Dr. Carozza's conduct was criminal at the time that he performed it, it is perhaps noteworthy that no action was taken against him by any government agency until after the Ryan Haight Act became law.

In so arguing, the government does not—because it cannot—dispute either the legislative history or the canons of statutory construction on which Dr. Carozza's motion relies. MTD at 16-18 & 18-20. Instead, the government cites to a handful of out-of-circuit cases in which courts held that online pharmacies violated the CSA prior to 2008. Gov't Opp'n at 5. The government fails to acknowledge, however, that in all of these cases, not only the offense conduct but also the court's *ruling* predated the Ryan Haight Act's effective date. As a consequence, these cases either did not address the implications of the Act, or else relied on the canon, which is no longer applicable, that one cannot infer congressional intent from the *absence* of a statutory amendment. *See United States v. Lovern*, 590 F.3d 1095, 1100-01 (10th Cir. 2009) (not addressed); *United States v. Smith*, 573 F.3d 639, 657-58 (8th Cir. 2009) (not addressed); *United States v. Fuchs*, 467 F.3d 889 (5th Cir. 2006) (not addressed); *United States v. Quinones*, 536 F. Supp. 2d 267, 273 (E.D.N.Y. 2008) ("The interpretation placed upon an existing statute by a subsequent group of Congressmen who are promoting legislation *and who are unsuccessful* has no persuasive significance.") (citation omitted; emphasis added).

Today, however, the landscape is markedly different. In passing the Ryan Haight Act, Congress left no doubt that it was creating a new offense. *See* MTD at 17-18. As Dr. Carozza noted in his moving papers, several officials—including the DEA's Deputy Director of Enforcement, the Chairman of the House Subcommittee on Crime, Terrorism, and Homeland Security, and the Senate sponsor of the Ryan Haight legislation—expressly stated that the Act "fill[ed] a gap" in the existing legal framework and enabled law enforcement to prosecute conduct that was previously beyond its reach. *Id.* at 18. Accordingly, this Court has critical, legally significant information before it that previous courts did not, to wit, contemporaneous evidence that the Ryan Haight Act did not affirm a preexisting legal rule but rather established a brand new criminal offense.

The statements of congressional leaders are consistent with, and reinforce, traditional canons of statutory construction. When Congress acts, it is presumed to have done so for a reason. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258-59 (2004) ("[W]hen Congress acts

to amend a statute, we presume it intends its amendment to have real and substantial effect.") (citation omitted), *cited in* MTD at 19. The government's view of the Act as a hortatory restatement of an established law offends this bedrock proposition. A far more natural reading of the statute, and one consonant with both the contemporaneous views of the legislators and well-established rules of construction, is that it achieved its self-evident purpose to make it a crime to issue prescriptions online without a prior face-to-face consultation.

In short, the government is mistaken in contending that this conduct was always criminal. Quite simply, it was not until the Ryan Haight Act became the law of the land that a physician could violate the CSA merely by omitting an in-person examination before issuing an online prescription. By charging an offense that did not exist at the time of its commission, the indictment violates the *Ex Post Facto* Clause. The charges against Dr. Carozza must therefore be dismissed.

### III.   ALTERNATIVELY, THE INDICTMENT REPRESENTS AN IMPERMISSIBLE ATTEMPT TO CRIMINALIZE ALLEGED MALPRACTICE

Even if the Court were to accept the government's argument that it has successfully evaded the *Ex Post Facto* Clause by charging Dr. Carozza under the pre-Ryan Haight CSA, dismissal would still be required. Having disclaimed any intention to prosecute Dr. Carozza under the law that actually addresses his conduct, the government must resort instead to amorphous notions of professional practice as the basis for criminal liability. In the Ninth Circuit, however, this simply will not work: the government cannot use the Controlled Substances Act to prosecute a physician merely for deviating from prevailing standards of professional medical care. Rather, the indictment would have to allege—as it certainly does not—that Dr. Carozza "us[ed] [his] prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood." *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006), *cited in* MTD at 9. This failure of pleading also requires that the indictment be dismissed.

#### A.   The Indictment Does Not Allege Conduct Prohibited By the CSA

As described at length in Dr. Carozza's moving papers, MTD at 6-9, the circumstances under which the Controlled Substances Act may be applied to a licensed physician are extremely

limited. In *United States v. Feingold*, 454 F.3d 1001 (9th Cir. 2006), the Ninth Circuit held in no uncertain terms that the CSA does not prohibit a doctor's prescribing behavior merely because it falls below an accepted standard of medical practice. *Id.* at 1010. Even outright malpractice perpetrated by "a *bad* or *negligent* physician" will not support criminal charges. *See id.* at 1011 (emphasis in original). It is only when a doctor ceases to be a doctor at all, such that he is indistinguishable from the "large scale pusher," that his prescriptions fall within the ambit of the CSA's criminal strictures. *Id.*

Here, the indictment does not contend that Dr. Carozza crossed the line from physician to drug dealer. The government does not contend that Dr. Carozza distributed narcotics or barbiturates or hallucinogens or stimulants or, indeed, any recreational drug. *See Gonzales*, 546 U.S. at 272 (noting that the CSA is "a statute combating recreational drug abuse"). Unlike the cases cited by the government, this case does not involve allegations that Dr. Carozza pandered to addicts, or prescribed without regard for symptoms, or distributed for resale. *Cf. Smith*, 573 F.3d at 644 (prescriptions written to unidentified patients and without regard for ailments); *Fuchs*, 467 F.3d at 898 (defendant distributed large quantities of addictive narcotics); *United States v. Birbragher*, 576 F. Supp. 2d 1000, 1006-08 (N.D. Iowa 2008) (80% of prescriptions were for addictive narcotics). Rather, as the government's opposition makes clear, the government wishes to empanel a jury for the sole purpose of deciding whether the failure to conduct in-person examinations before issuing online prescriptions fell "outside the scope of professional medical practice" in the year 2006. Gov't Opp'n at 10.

Yet this is precisely what *Feingold* forbids. Absent a clear legislative prohibition—like the one supplied by the Ryan Haight Act in 2008—the question whether usual practice required in-person exams is effectively a malpractice inquiry. *See* Cal. Civ. Jury Instr. 501 (doctor engages in malpractice "if he fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful [physicians] would use in the same or similar circumstances"). In *Feingold*, however, the Ninth Circuit held that a jury cannot "convict a licensed practitioner under § 841(a) solely on a finding that he has committed malpractice, intentional or otherwise." *Id.* at

1010. Accordingly, absent any allegation that Dr. Carozza did more than deviate from the usual standard of medical practice, no jury can convict him of violating the Controlled Substances Act. *Id.* at 1011 ("[The standard for criminal liability under § 841(a) requires more than proof of a doctor's intentional failure to adhere to the standard of care.").

### B.  Federal Prosecution of Alleged Malpractice Violates Fundamental Notions of Federalism

For similar reasons, the government's attempt to prosecute Dr. Carozza for acting outside the scope of professional practice violates fundamental notions of federalism. As Dr. Carozza has argued, MTD at 12-14, regulation of the physician-patient relationship, like most every other aspect of medical practice, is entrusted to the general police power of the states. *See Whalen v. Roe*, 429 U.S. 589, 603 n.30 (1977); *Conant v. Walters*, 309 U.S. 629, 647 (9th Cir. 2002) (Kozinski, J., concurring). Any effort by the Attorney General to invade this province by unilaterally prohibiting a particular practice effects an impermissible shift of authority from the states to the federal government. *Gonzales*, 546 U.S. at 275.

In its opposition, the government does not deny that it lacks the authority to define general standards of medical practice. Indeed, the government agrees that *Gonzales* stands for the proposition that "the federal government through the Attorney General of the United States cannot regulate the practice of medicine." Gov't Opp'n at 7. Nonetheless, the government contends that this prosecution is appropriate because the government retains the power to "regulate[] medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug-dealing and trafficking as conventionally understood." *Id.* (quoting *Gonzales*, 546 U.S. at 269-70).

Dr. Carozza obviously agrees with this characterization of the government's very limited power to control the practice of medicine. *See* MTD at 7-9. The problem for the government is that the indictment in this case nowhere alleges that Dr. Carozza "engage[d] in illicit drug-dealing and trafficking *as conventionally understood*." *Gonzales*, 546 U.S. at 269 (emphasis added). Rather, the only allegation set forth in the indictment is that Dr. Carozza issued prescriptions online without a prior in-person exam. This, of course, is something very different from

conventional drug trafficking—and hence, under *Gonzales*, it is beyond the reach of the federal government. *Id.* ("Beyond this, however, the statute manifests no intent to regulate the practice of medicine generally.").

Nor does it matter, as the government suggests, that the defendant's actions purportedly ran afoul of provisions of *state* law that are not alleged in the indictment. Gov't Opp'n at 8. The government here seeks to bring criminal charges against a physician not for violating state law, or for acting as a drug dealer, but for following a practice that the federal government contends was unusual. Such an allegation engenders a usurpation of the state's police powers and is accordingly barred by *Gonzales*.

In sum, the government cannot distance itself from *ex post facto* problems without pursuing a theory of prosecution that the Ninth Circuit has squarely foreclosed. Because the CSA does not prohibit malpractice, and because the federal government cannot intrude so far into the states' regulation of medicine, the indictment of Dr. Carozza is deficient. The charges against him should therefore be dismissed.

## Conclusion

For all of the foregoing reasons, as well as the reasons stated in his moving papers, the Court should grant the instant motion and dismiss the charges against Dr. Carozza.

DATED: November 29, 2010          Respectfully submitted,


By   /s/
    Josh A. Cohen
    Attorney for JOSEPH CAROZZA


By   /s/
    Lawrence S. Lustberg
    Attorney for JOSEPH CAROZZA