Josh A. Cohen (SBN 217853)
Nicole Howell Neubert (SBN 246078)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
jcohen@clarencedyer.com
nhneubert@clarencedyer.com

Attorneys for Defendant
JOSEPH CAROZZA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | CASE NO. CR-10-0642 CRB |
|---|---|
| Plaintiff, | **DEFENDANT JOSEPH CAROZZA'S LEGAL MEMORANDUM RE ADMISSIBILTY OF DEFENDANTS' PRIOR STATEMENTS** |
| v. | |
| JOSEPH CAROZZA, | |
| Defendant. | |

**INTRODUCTION**

On his own behalf and on behalf of his codefendants, defendant Joseph Carozza respectfully submits this memorandum of law to address the issue presented at the end of the first day of trial: Does the hearsay rule preclude a defendant from introducing his own prior statements to prove his state of mind in furtherance of a good-faith defense?[1]

_____

[1] This issue arose in connection with a particular document – a Safescripts business plan prepared long before Safescripts issued its first prescription – that defendant Napoli sought to introduce on cross-examination of a government witness.  The government objected to the document as hearsay, and the Court sustained the objection.

There are two issues buried in this question. The first is whether the evidence is hearsay, that is, an out-of-court statement offered for the truth of the matter asserted. The second is whether a non-hearsay statement may be excluded because it is offered by the defendant in his own defense.

For the reasons set forth herein, the statements offered by the defendants in this case are not hearsay and are not "self-serving." Accordingly, the Court should admit them into evidence with a limiting instruction.

## I.  An Out-Of-Court Statement Offered to Show What The Declarant Thought At the Time of the Statement – Not That What He Thought Was True – Is Not Hearsay

To date, there has been a heated disagreement among the parties over a fundamental evidentiary issue. The government has repeatedly argued that a prior statement by a defendant is hearsay if it is offered to show what the defendant was thinking (or knew or believed) at the time he made the statement. Thus, the government has sought to exclude a wide range of documentary evidence, including, for example, the Safescripts business plan, Skype chats, and the complaint in the declaratory-judgment action. The government has contended that these documents constitute prior statements by the defendants that the defendants are offering for the truth of what they assert, to wit, that the defendants believed what they said.

The government is wrong. A statement offered to show what a person thought (or knew or believed) at the time he made the statement is not hearsay because it is not offered for its truth. Indeed, the statement may be completely and indisputably false. For example, in a murder case in which the defendant claims self-defense, his statement "I am being followed," made to a friend during a telephone call ten minutes before the shooting, is admissible as non-hearsay even if the evidence clearly establishes that the victim was not following him. The point of the statement is not to prove that the defendant was in fact being followed, but simply that he *thought* he was.

This concept was discussed at some length by the Second Circuit in *United States v. Harris*, 733 F.2d 994 (2d Cir. 1984):

> We turn next to Harris's argument that the district judge erroneously excluded the proffered testimony of his parole officer and attorney on the ground of hearsay. Harris claims that this testimony was not hearsay under Fed.R.Evid. 801(c) since it was offered not to prove the truth of its assertions to the effect that Steward was

a government agent, but instead only to show that Harris *thought* he was. . . .

> To the extent that Harris told either witness that he had "an encounter with some people who could cause him trouble"; that "the Government and people were after him and trying to set him up"; that "the Government was trying to set him up" . . . ; and/or that "Mr. Steward had brought an agent to him" . . . , the district judge erred in characterizing these statements as hearsay under Fed.R.Evid. 801(c). These statements were admissible, not for their truth, but instead as circumstantial evidence of Harris's state of mind – his knowledge of Steward's cooperation. *See United States v. Parry*, 649 F.2d 292, 295 (5th Cir. 1981).

> On the other hand, to the extent that Harris told either his parole officer or his attorney "that he *believed* [Steward] brought an agent to him" . . . , this statement would indeed have been hearsay under Fed.R.Evid. 801(c), since its evidentiary significance depended on the truth of the matter asserted – Harris's belief.

*Id.* at 1003-04 (emphasis in original).

The *Parry* case cited by the court in *Harris* is to similar effect.  There, the defendant sought to call his mother to testify that he told her that the person who had been telephoning her home was a narcotics agent, and that he, Parry, was working with the agent.  *Parry*, 649 F.2d at 295.  The Fifth Circuit analyzed the issue as follows:

> As Parry explained to the district court, this statement was not offered to prove that the caller was the narcotics agent or that Parry was working with the agent, but to establish that Parry had knowledge of the agent's identity when he spoke. In other words, Parry offered the statement as the basis for a circumstantial inference by the jury that, if this statement was in fact made – a question which the in-court witness could testify to while under oath, before the jury, and subject to cross-examination – then Parry probably knew of the agent's identity. *Using an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule.*  Contrary to the government's position, the danger that the jury could improperly use the out-of-court assertion as an assertion to be believed does not render the statement inadmissible.  Where evidence is admissible for one purpose but not for another, the accepted practice is to admit the evidence with instructions that the jury consider the evidence only for the permissible purpose.  A different rule applies only where the probative value of the evidence if used for its allowable purpose is outweighed by the prejudice that would result if the evidence were used for its improper purpose.

*Id.* (emphasis added).  As such, it is well-established that a statement is not hearsay (and need not be justified under any exception to the hearsay rule) when it is offered to show what the speaker thought (or knew or believed) at the time he spoke.

Here, the government errs when it argues, over and over again, that the defendants are offering their prior statements "for the truth of the matter asserted, *which is what [they] believed*."

1  RT (9/12/12), at 44 (emphasis added); *see also id.* at 49.  The matters asserted and the defendants'

2  beliefs are two different things.  For example, the business plan does not state, "I *believe* many

3  consumers do not want to go to their doctors for a prescription"; it states "Many consumers do not

4  want to go to their doctors for a prescription."  If offered for the truth of the matter asserted, the

5  statement would be evidence that consumers do not want to go to their doctors.  But Mr. Napoli is

6  not offering the statement to show what consumers actually wanted; rather, the point of the

7  statement is to show that Mr. Napoli *thought* there was a market of such consumers at the time he

8  prepared the business plan.

9         One possible reason the government keeps mistaking this concept is because certain of the

10  statements at issue happen to be true.  When Mr. Napoli and Dr. Carozza wrote in the declaratory-

11  judgment complaint that the Ryan Haight Act was pending before Congress, that was a true

12  statement; the Ryan Haight Act *was* pending before Congress.  Likewise, when Mr. Napoli

13  suggested in the business plan that the DEA frowned on the proposed business model, that was

14  also true; the DEA *did* frown on the business model.  But the fact that the statements *are* true does

15  not mean they are being *offered* for their truth.  The point of the statement about the Ryan Haight

16  Act is not to show that the Ryan Haight Act was pending, but to show that the defendants knew at

17  the time that it was (and hence are not relying on the Act as a *post hoc* justification for their

18  conduct).  The point of the business plan is not to show that the DEA frowned on the business

19  model, but to show that Mr. Napoli believed at the time that it did (and pursued the business

20  nonetheless, because he did not believe the DEA's frowns were preclusive).

21         In sum, the defendants seek to introduce certain of their out-of-court statements to show

22  what they thought (or knew or believed) at the time they made the statements, but not that what

23  they thought (or knew or believed) was true.  As such, the statements are not hearsay and cannot

24  be excluded under the hearsay rule.  The Court should admit the statements with a limiting

25  instruction that the jury can consider the statements only insofar as they bear on what the

26  defendants were thinking (or knew or believed) at the time, and not for the truth of anything they

27  assert.

28  ///

## II.     Because the Statements Are Not Hearsay, It Is Unnecessary to Reach the Hearsay *Exception* Under FRE 803(3) For Statements Of Then-Existing State-Of-Mind

The government has spilled a great deal of ink on the question whether a hearsay *exception* under Federal Rule of Evidence 803(3) applies to the defendants' prior statements.  Under that rule, a hearsay statement can be admitted (notwithstanding its hearsay nature) if it is "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."  Fed. R. Evid. 803(3).

The Court need not reach this issue.  For the reasons discussed above, there is no need to admit the statements under an exception to the hearsay rule because the statements are not hearsay to begin with.

## III.    Although the Court Has Discretion To Exclude "Self-Serving" Statements Under Rule 403, Such Exclusion Is Inappropriate Where There Is No Evidence That the Statements Are Unreliable

The government has further confused the issue before the Court by repeatedly injecting the term "self-serving" into the analysis.  According to the government, every statement the defendants made in the past – including but not limited to the contents of the business plan, the contents of the declaratory-judgment complaint, and every statement in every Skype chat – is "self-serving" when offered into evidence at trial, and should be excluded on that basis as well.[2]

Similarly, the government has consistently insinuated that special rules apply when a defendant seeks to admit his own prior statements into evidence.  According to the government, only the government can introduce a defendant's prior statements into evidence as admissions by a party-opponent.  *See* Fed. R. Evid. 801(d)(2)(A).  It follows, says the government, that the

---

[2] At times, the government has collapsed its hearsay argument and its self-serving argument into one, contending that the Court should exclude the defendant's prior statements as, in effect, self-serving hearsay.  But these are separate and distinct concepts that must be separately analyzed.  A self-serving statement may or may  not be hearsay, and a hearsay statement may or may not be self-serving.

1   defendants cannot introduce such statements on their own.  *See* Gov't MIL Re Evidence of Good

2   Faith (Docket No. 780), at 5; RT (10/1/12), at 222 ("MS. AULT: Your Honor, this is a statement

3   of the defendant *offered by the defendant* for the purpose of establishing the truth of the matters

4   asserted therein.").

5       Both of the government's arguments are incorrect as a matter of law.  Starting with the

6   second argument first, it is irrelevant that the defendants are the ones offering their own statements

7   into evidence.  To be sure, the government is correct that a defendant cannot offer his own

8   statement into evidence *as an admission of a party-opponent*, but that does not preclude him from

9   offering the statement altogether.  Where, as here, the statement is not hearsay (because, as

10  described above, it is not offered for its truth), the statement can be entered into evidence by any

11  party, including the defendant.

12      The government's other argument fares no better.  There is nothing in the hearsay rule that

13  distinguishes "self-serving" from disinterested statements.  Whether introduction of a statement

14  serves the speaker or not, the question from a hearsay perspective is simply whether the statement

15  was made out of court and is being offered for the truth of the matter asserted.

16      The reason the government's argument has resonated with the Court is because the Court

17  knows that a defendant cannot boot-strap a defense by intentionally fabricating self-serving

18  statements and then pointing to those statements as evidence of his good faith.  Earlier in this case,

19  the Court analogized to the case of a bank robber who, caught red-handed with a bag in money in

20  his arms, tells the police "This money was mine." RT (9/12/12), at 46.[3]  As the Court has implied,

21  such a statement generally would not come into evidence.

22      Critically, however, the reason such a statement would be excluded is not because the

23  _____

24      [3] In the actual hypothetical supplied by the Court, the robber says "*I thought* this money
    was mine."  Offered for the truth of the matter asserted – the robber's thoughts – this statement

25  would in fact be hearsay and could be excluded on that basis (absent a pertinent exception to the

26  hearsay rule).  However, none of the statements at issue in this case includes language like "I
    thought . . ." or "I believed . . . ."  Accordingly, the hypothetical has been adjusted to better reflect

27  the issue before the Court.

28

1  statement is hearsay; it is because the statement is substantially more prejudicial than probative

2  under Rule 403.  If offered to show what the defendant was thinking, the statement is not hearsay

3  and cannot be excluded on that basis.  However, the Court *can* exclude the statement – and courts

4  *do* exclude such statements – because the circumstances under which it was made demonstrate that

5  it was fabricated by the defendant in order to boot-strap a defense.

6        The Courts of Appeals have explained this principle.  In *United States v. Dellinger*, 472

7  F.2d 340 (7th Cir. 1973), the defendants were convicted of violating the Anti-Riot Act based on

8  activities surrounding the 1968 Democratic Convention.  In order to prove intent, the government

9  introduced, as party admissions, various statements the defendants made before and after the

10  protests.  However, the district court excluded, as the defendants' self-serving declarations,

11  various documents the defendants sought to introduce as proof of state of mind.  These documents

12  included, for example, a 21-page pamphlet the defendants wrote entitled "Movement Campaign

13  1968: An Election Year Offensive," which the defendants distributed at an organizational

14  gathering to plan the protests.  Among many other things, the pamphlet stated, in a section called

15  "On Disruption in Chicago," that all activity at convention time, in order to be effective, had to be

16  "nonviolent and legal."  *Id.* at 381.

17        The Seventh Circuit found error:

18        We think that a flat rule of exclusion of declarations of a party on the grounds that
          they may be described as "self-serving" even though otherwise free from
19        objection under the hearsay rule and its exceptions, detracts from the fund of
          relevant information which should be available to the jury, without, in
20        compensation, materially insuring the integrity of the trial process.  As we held in
          *United States v. Bucur*, 194 F.2d 297, 301 (7th Cir. 1952), citing *United States v.*
21        *Matot*, 146 F.2d 197, 198 (2d Cir. 1944):

22            "[Defendant] had a right to attempt to meet and overcome this
              proof [of his knowledge] against him by evidence tending to
23            establish his good faith.  To be compelled to meet this challenge
              without the benefit of testimony concerning his conduct and
24            statements . . . seems to us manifestly wrong.  If testimony of this
              nature is excluded by the legalistic tag of 'self-serving,' an
25            anomalous situation is presented where the accused is faced with
              the need to bolster his claim of innocence but is deprived of the
26            most logical means of doing so."

27        We find persuasive reasoning in accord in 6 Wigmore, Evidence § 1732 (3rd ed.
          1940):

28

> "But here [in excluding self-serving statements] the singular
> fallacy is committed of taking the possible trickery of guilty
> persons as a ground for excluding evidence in favor of a person not
> yet proved guilty; in other words the fundamental idea of the
> Presumption of Innocence is repudiated."

*See also United States v. Ostendorff*, 371 F.2d 729, 732 (4th Cir. 1967), *cert. den.*
386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 229.

> A flat rule against self-serving declarations, which grew out of the one-time
> refusal to allow defendants to testify, no longer makes sense.  A pragmatic
> approach should take its place.  We find adequate guidelines in Wigmore, § 1732:
> "There is no reason why a declaration of an existing state of mind, if it would be
> admissible against the accused, should not be admissible in his favor, *except
> insofar as the circumstances indicate plainly a motive to deceive*."

> Accordingly none of the written statements of defendants should have been
> excluded by reason of their being self-serving.  Arguably some of them may have
> been objectionable for other reasons, and it is unnecessary here to rule definitively
> on all.  We do think it clear that Davis and Hayden [the authors of the 21-page
> pamphlet] were entitled to have Defendants' Exhibit 235 [the pamphlet] admitted
> for consideration by the jury.  It was their statement to a group of people
> interested in similar objectives and whom they were trying to persuade to a course
> of action which would lead to the events in Chicago out of which this case arose.
> On its face the exhibit represented their intent with respect to violence at this
> stage of development of their plans, at a time not too remote.  Whether the
> statement was deceitful, or whether their plans changed before the time of their
> interstate travel, was, in the context of this case, for the jury to decide.

*Id.* at 381-82 (emphasis added) (modifications in original, except parentheticals added in final

paragraph).

As *Dellinger* makes clear, the mere fact that a defendant is offering his own prior

statements does not preclude their admission when they are offered for a legitimate, non-hearsay

purpose.  Where, however, the circumstances under which the statement was made "indicate

plainly a motive to deceive" – that is, where the statement was self-serving *when made* – exclusion

may nonetheless be appropriate on straightforward 403 grounds.  *Id.*

Indeed, this is precisely what the Ninth Circuit held in *United States v. Miller*, 874 F.2d

1255 (1989):

> Miller also contests the exclusion of statements he made to his wife during a
> telephone conversation on the morning of October 2, 1984.  Miller wanted to
> introduce a tape of the conversation, which had been recorded by the government
> using a telephone tap.  Miller argued that he was not offering the tape for the truth
> of the matters asserted in it, but only to establish his deteriorating mental,
> physical, and emotional condition during the latter part of the interrogation.
> Miller discusses his uncertainty about his admissions with his wife and speaks of
> his confused, distraught state.  The court excluded the tape because it was self-

serving. The district court found that this was not reliable evidence because Miller had had time to manufacture the contents of the conversation as well as his demeanor, and because he knew that the FBI was monitoring the conversation.

The bulk of the statements contained in the tape relate to Miller's belief about his previous conduct during the interrogations. As such, they are properly excludable as hearsay under Rule 803(3). However, Miller argues that the tape is not hearsay at all because it was not offered for the truth of the matters asserted, but only to show Miller's distraught state. Assuming this to be true, we conclude that the tape was still properly excluded. The probative value of the tape is very low considering its unreliable and self-serving nature. The district court properly noted that Miller had had time to manufacture both the content of, and his demeanor during, the conversation. The phone call occurred, not during the interrogations, but on the morning of October 2, after Miller had had a night's rest from the interviews and several hours before they were scheduled to resume. Furthermore, Miller knew that his phone was being tapped and, indeed, he mentioned to his wife during the phone call that the government was listening. Given the potentially manufactured nature of this evidence, the district court properly recognized that the tape was unreliable and of little probative value. Indeed, what little probative value the tape has in showing Miller's mental state is clearly outweighed by the danger that the jury will be confused or misled by the introduction of these statements, which, if considered for their content, are clearly hearsay. The district court was correct in excluding this tape.

*Id.* at 1265-66.

In sum, courts exclude defendants' "self-serving" statements only when the circumstances under which they were made reveal an intent to fabricate – in which case the statements are excluded under Rule 403. This Court is right to be skeptical of a bank robber's post-arrest statement that "the money is mine," but the real origin of that skepticism is (or should be) the circumstances surrounding the making of the statement, not the mere fact that the defendant made it. Accordingly, it would be improper for the Court to exclude the defendants' prior, non-hearsay statements simply because the defendants are the ones introducing them in their own defense at trial. Absent evidence that the statements were self-serving *at the time they were made* – such that a 403 balancing might favor their exclusion – the statements can and should be admitted through any party that offers them, including the defendants.

The statements at issue in this case are nothing like the robber's exculpatory post-arrest statement to police. The business plan was prepared before the business was even funded; as such, it is in many ways the best evidence of what Mr. Napoli was thinking at the time (whether or not the statements in the business plan turned out to be true). Nothing about the Skype chats suggests a motive to fabricate; indeed, the Skypes are a goldmine for the government precisely because the

1  defendants were so unguarded in what they said.  And the declaratory-judgment complaint was

2  drafted and filed during the alleged conspiracy, in the midst of a great deal of legal uncertainty and

3  well before Dr. Carozza met with the DEA.

4        On the other side of the Rule 403 balance, this evidence is not just probative of the

5  defendants' good faith, it is indispensable to their defense.  A defendant can always take the

6  witness stand and testify that he believed what he was doing was legal, but if there is no evidence

7  from the time period in question demonstrating that he held that belief *at the time*, the jury will

8  almost certainly dismiss the testimony as a *post hoc* justification.  It is for precisely this reason

9  that "a defendant raising a good faith reliance defense is entitled to offer evidence of what he

10 relied upon, even over a timely hearsay objection."  *United States v. Bishop*, 291 F.3d 1100, 1111

11 (9th Cir. 2002).  As the Seventh Circuit observed in *Dellinger*, a defendant has

12        a right to attempt to meet and overcome . . . proof [of his knowledge] against him
          by evidence tending to establish his good faith.  To be compelled to meet this
13        challenge without the benefit of testimony concerning his conduct and statements
          . . . seems to us manifestly wrong.  If testimony of this nature is excluded by the
14        legalistic tag of 'self-serving,' an anomalous situation is presented where the
          accused is faced with the need to bolster his claim of innocence but is deprived of
15        the most logical means of doing so.

16 *Dellinger*, 472 F.2d at 381-82.

17        Accordingly, none of the defendants' prior statements (at least, none of the prior

18 statements that have been at issue before the Court thus far) should be excluded as substantially

19 more prejudicial than probative under Rule 403.

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

**CONCLUSION**

For all of the reasons stated, the Court should permit the defendants to introduce their prior statements to show what they thought at the time they made them in furtherance of their good-faith defense, subject to a limiting instruction that the statements cannot be considered for the truth of what they assert.

DATED:  October 8, 2012                    Respectfully submitted,


By  _____/s/_____
                   Josh A. Cohen
                   Nicole Howell Neubert
                   Attorneys for JOSEPH CAROZZA